# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Melvin Marek, Jr. | * | Case No. 3:16-cv-3005 |
| 5763 Webster Road | | |
| Sylvania, Ohio 43560 | * | |
| | | Judge: |
| Plaintiff, | * | |
| | | Magistrate Judge: |
| v. | * | |
| | | |
| Toledo Tool & Die Company, Inc. | * | **COMPLAINT** |
| 105 West Alexis Road | | |
| Toledo, Ohio 43612 | * | |
| | | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | * | |

Now come Plaintiff Melvin Marek, Jr. ("Plaintiff") for his complaint against Defendant Toledo Tool and Die Company, Inc. ("Toledo Tool" or "Defendant"), hereby states as follows:

## I.    JURISDICTION AND VENUE

1.    This action is brought under 28 U.S.C. § 1331 pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111"), and the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA").

2.    This action is also brought for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Ohio Revised Code Chapter 4112 ("Chapter 4112"). Plaintiff brings this action to obtain relief provided in the FMLA and Chapter 4112 as a result of Defendant's discriminatory and retaliatory conduct towards him resulting in his loss of wages, compensation, and benefits.

3.    This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

4.     Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the Plaintiff entered into an employment relationship with Defendant in the Northern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Northern District of Ohio, and Defendant has its principal place of business as well as conducted substantial business in the Northern District of Ohio.

## II.    PARTIES

5.     Plaintiff Melvin Marek, Jr., is an individual and United States citizen. He is a resident of the State of Ohio living in the Northern District of Ohio.

6.     At all times relevant herein, Plaintiff was an "employee" of Defendant as defined in the FLSA, Chapter 4111, the OPPA, and Chapter 4112. Further stating, Plaintiff was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2).

7.     Defendant Toledo Tool is an Ohio for profit corporation with its principal place of business in the Northern District of Ohio. Defendant Toledo Tool is in the business of stampings, die, and welded assemblies and requires blue collar job duties including but not limited to assembly, heat treating, tooling, tool & die, and welding various products.

8.     At all times relevant to this action, Defendant Toledo Tool is an "employer" as that term is defined by the FLSA, Chapter 4111, the OPPA, and Chapter 4112.

9.     Upon information and belief, Defendant operates and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

10.    Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that they were legally required to comply with the wage and overtime payment laws of the United States and of the State of Ohio.

11.    Further stating, Defendant was an "employer" as defined by the FMLA, 29 U.S.C. § 2611, *et seq.*, because it is engaged in commerce or in any industry or activating affecting commerce and employs or employed at least fifty (50) or more employees at the relevant worksite during all times relevant for each working day during each of 20 or more calendar years in the current or preceding calendar year.

### III.    STATEMENT OF FACTS

12.    In or around February, 2012, Plaintiff began working for Defendant as a maintenance technician.

13.    In or around March, 2013, Plaintiff was "promoted" to "maintenance supervisor." The offer letter indicates that Plaintiff would be paid $23 per hour and paid on a weekly basis, which "converts to $47,840 annually." However, Defendant never compensated Plaintiff on a salaried basis.

14.    Instead, Plaintiff was at all times compensated on an hourly basis. Specifically, his weekly wages were reduced depending on the number of hours worked in a workweek (including when he worked below forty (40) hours per week). In addition, at all times relevant, Plaintiff primarily performed non-exempt duties. Additionally, although his title included "supervisor," he neither primarily performed managerial duties nor supervise two or more employees. Plaintiff could not hire, fire, or discipline employees. Thus, at all times relevant, Plaintiff remained a non-exempt, hourly employee entitled to overtime wages for all hours worked in excess of forty (40) in any workweek.

15.     During his employment with Defendant, Plaintiff consistently met or exceeded his superiors' expectations.

## FAIR LABOR STANDARDS ACT VIOLATIONS

16.     Plaintiff was compensated at $23 per hour and regularly worked in excess of at least forty (40) hours per week. However, he was not paid time-and-a-half of his regular hourly rate ("overtime rate") for all hours worked in excess of forty (40).

17.     Defendant misclassified Plaintiff as a salaried exempt employee.

18.     However, at all times relevant, Plaintiff was employed in an hourly non-exempt position because primarily performed non-exempt duties consisting of general maintenance.

19.     For example, in December, 2013 Plaintiff worked 49.75 hours, but was paid his regular rate of $23 per hour for all hours worked. As such, he was willfully not paid overtime rate for 9.75 hours that were in excess of forty for the workweek of December 23, 2013 through December 29, 2013. *See* **Exhibit A-1**.

20.     A second example in 2014 reflects Defendant's consistent and willful improper pay practice is outlined in the pay period beginning March 24, 2014 to March 30, 2014. Specifically, Plaintiff worked 46.25 hours, but was paid his regular rate of $23 per hour for all hours worked in excess of forty (40). As such, he was not paid overtime rate for the 6.25 hours worked in excess of forty (40) for that workweek. *See* **Exhibit A-2**.

21.     A third example in 2015 reflects Defendant's consistent and willful improper pay practice is outlined in the pay period beginning April 6, 2015 through April 12, 2015. Specifically, Plaintiff worked 48 hours, but was paid his regular rate of $23 per hour for all hours worked in excess of forty (40). As such, he was not paid overtime rate for the 8 hours worked in excess of forty (40) for that workweek. *See* **Exhibit A-3**.

22.     A fourth example in 2016 reflects Defendant's consistent and willful improper pay practice is outlined in the pay period beginning May 9, 2016 through May 15, 2016. Specifically, Plaintiff worked 44.90 hours, but was paid his regular rate of $23 per hour for all hours worked in excess of forty (40). As such, he was not paid overtime rate for the 4.90 hours worked in excess of forty (40) for that workweek. *See* **Exhibit A-4**.

23.     However, as a fifth example in 2016 reflects Defendant's consistent and willful improper pay practice indicates that for the pay period beginning March 21, 2016 through May 27, 2016. Specifically, Plaintiff worked 54.00 hours, but was paid his regular rate of $23 per hour for the first 48 hours worked that week. Then, for hours 49 through 54 worked that same week, Plaintiff was compensated 1.5 times his regular rate of pay, or overtime compensation. *See* **Exhibit A-5**.

24.     The above-referenced examples are a few of many to reflect Defendant's consistent and unlawful pay practices.

## FAMILY AND MEDICAL LEAVE ACT VIOLATIONS

25.     In or around June, 2015, Plaintiff exercised his FMLA rights and submitted his health care provider's FMLA certification documentation for his serious health condition. Plaintiff suffers from anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and mood disorder. His FMLA documentation provided for intermittent leave during symptomatic episodes ranging up to four (4) times per month and lasting up to one (1) day per episode. Additionally, his physician indicated that Plaintiff's potential time away from work could be as long as one week per episode depending on the level and severity of stressors and symptoms. Finally, Plaintiff's physician set forth that Plaintiff would require follow-up appointments every 1-2 weeks. The FMLA certification was approved on June 29, 2015.

26.     To that end, a factual background leading up to Plaintiff's disciplinary history and termination is important. Specifically, on or about May 5, 2016, Defendant presented Plaintiff with a new attendance policy, which was allegedly supposed to be in effect on January 1, 2016, even though it was presented to Plaintiff for the first time on May 5, 2016.

27.     Importantly, Plaintiff's supervisor marked on the reminder that as of May 5, 2016, Plaintiff had zero occurrence points against his record. Plaintiff and Douglas Blake, Defendant's HR Manager ("Doug"), signed this acknowledgement.

28.     During the subsequent months, between May 7, 2016 and November 11, 2016, Plaintiff exercised his right to take intermittent FMLA leave. Throughout this period, Plaintiff continued to comply with Defendant's policies and submitted proper paperwork for his FMLA-qualifying or other excused absences as instructed.

29.     Nevertheless, Plaintiff was assessed attendance points for absences related to his FMLA leave.

30.     On or about September 28, 2016, Doug informed Plaintiff *for the first time* that he was required to "renew" his FMLA certification. Accordingly, Doug gave Plaintiff the Form WH-381 which provided that Plaintiff must return the appropriate FMLA paperwork by October 14, 2016. Within the renewal FMLA certification, Defendant indicated that the paperwork could be returned to "HR Confidential Fax # 419-476-9944."[1]

31.     Upon receiving the renewal request from Doug, Plaintiff requested his physician complete the appropriate paperwork.

---

[1] Although Defendant represented that it had a confidential human resources fax number, that is untrue as Defendant's entire business has one fax number, meaning that Plaintiff's personal confidential health information would have been commingled with other non-confidential, business-related faxes Defendant received if Plaintiff would have returned his FMLA paperwork by fax. See e.g. http://www.pma.org/directory/profile.asp?id=002065 which lists Defendant's general fax number as 419-476-9944, the same number on Plaintiff's FMLA paperwork and the same number which is also listed for Adam Kujawa, VP Sales & Engineering, and Louie Ehret, Sales Manager, per the website. See also https://www.moreopp.com/company-details-36/12382497.html; http://www.usbizs.com/OH/Toledo/Toledo_Tool_Die_Co_Inc_9u7.html.

32.     Because Defendant did not have a confidential electronic means of submitting the FMLA paperwork, Plaintiff had to personally pick up the paperwork to submit it to Defendant.

33.     On October 14, 2016, Plaintiff informed Doug and Nancy, an HR generalist, that his FMLA renewal paperwork was ready to be picked up at his physician's office. He further informed them that he would retrieve the renewal paperwork during his lunch. Neither Doug nor Nancy objected to Plaintiff retrieving his paperwork during his lunch. Plaintiff had no other choice as Defendant noted his paperwork was due before the close of business that day. Although Defendant knew Plaintiff was obtaining his renewal FMLA paperwork during his lunch, he was assessed an occurrence for his extended lunch that day.[2]

34.     Nevertheless, Plaintiff timely hand delivered the renewal FMLA certification paperwork that was requested by Doug on September 28, 2016, from his health care provider for the same serious health condition(s) described above. His FMLA documentation provided for symptomatic episodes ranging from four (4) times per month and lasting up to one (1) day per episode. He was also approved for follow-up appointments every 1-2 weeks.

35.     Upon information and belief, the FMLA renewal certification should have been backdated to cover any previous FMLA-qualifying absences during the period whereby Plaintiff believed that his prior FMLA certification was still effective because he was never informed by Defendant as to whether his absences were FMLA-qualifying until October 21, 2016.

36.     On October 21, 2016, Tony Kujawa, President/CEO of Defendant Toledo Tool, along with Doug held a meeting with Plaintiff. During that meeting, Plaintiff was informed *for the first time* that he had attendance issues. At the meeting, Defendant disciplined Plaintiff through

---

[2] Plaintiff did not know he would be given an occurrence for obtaining his FMLA paperwork until he received his termination.

its "no fault attendance policy"[3] and placed Plaintiff on a "Level 3 Attendance Warning (45.00 points)" due to a "sub-par attendance." Plaintiff was surprised for the sudden warning because he always complied with Defendant's policies and procedures for his absences, the majority of which were FMLA-qualifying. At no point prior to October 21, 2016 did Defendant raise Plaintiff's attendance record as problematic in any way.

37.    That same day, Defendant further interfered with and/or retaliated against Plaintiff for exercising his FMLA rights by requiring Plaintiff to sign a "last chance agreement." Specifically, the last chance agreement indicated that if Plaintiff met or exceeded 51.1 points, it would constitute grounds for his termination. Importantly, Defendant informed Plaintiff that the Level 3 Attendance Warning would be effective on October 13, 2016 even though it was presented to him on October 21, 2016 for the first time.

38.    On November 16, 2016, Defendant terminated Plaintiff allegedly for violating the last chance agreement because he purportedly met or exceeded 51.1 occurrence points. However, Plaintiff should have never been required to sign a last chance agreement because the overwhelming majority of Plaintiff's absences were FMLA-qualifying which he believed were approved because he was not informed otherwise.

39.    Plaintiff was subsequently terminated on November 11, 2016 for purportedly violating the last chance agreement.[4] Defendant's purported reason for Plaintiff is merely pretext.

---

[3] Defendant states that the "only exceptions [for absences] will be approved Paid Time-Off (PTO), bereavement per company policy, jury duty, approved Family Medical Leave or Lack of Work" and does not allow for medical leave as a form of an accommodation.

[4] Again, one of the occurrences indicated on the termination notice was for October 14, 2016, whereby Plaintiff used his lunch period to submit his renewed FMLA documentation as explained above.

## DISABILITY DISCRIMINATION

40.　　As indicated above, Plaintiff suffers from three mental impairments that individually or collectively constitute a disability.

41.　　As of May 5, 2016, Plaintiff had zero occurrence points. Thereafter, Plaintiff suffered from symptomatic episodes necessitating medical leave and/or medical treatment. In the alternative of FMLA-qualifying absences, Plaintiff requested an accommodation in the form of medical leave for absences related to symptomatic episodes or medical treatment. In response, Defendant disciplined Plaintiff by giving him occurrences to count towards his discipline, even though his absences were directly related to his disabilities.

42.　　Upon information and belief, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: failing to accommodate his disabilities, disciplining him in the form of occurrences, forcing him to sign a last chance agreement, terminating his employment, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

### IV.　CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**FLSA –Unpaid Overtime**

43.　　All of the preceding paragraphs are realleged as if fully rewritten herein.

44.　　This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

45.　　During the three years preceding the filing of this Complaint, Defendant employed Plaintiff.

46.　　Plaintiff was compensated as an hourly employee at a rate of $23 per hour. He was promoted to maintenance "supervisor" on or about March 6, 2013 and his compensation was

alleged to be $47,840 annually. However, at all times, Plaintiff did not receive a predetermined amount of compensation and/or Defendant had an actual practice of reducing his compensation when he worked less than 40 hours Plaintiff in a workweek. Consequently, Plaintiff was not compensated on a salary basis.

47.     During relevant times, Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, they were not "executive," "computer," "administrative," "professional," neither learned nor creative, or "computer" employees, as those terms are defined under the FLSA.  *See* 29 C.F.R. §§ 541.0, *et seq*.

48.     Plaintiff was not exempt from receiving FLSA overtime benefits because, *inter alia*, he was not "learned professional" employees, as that term is defined under the FLSA.  See 29 CFR § 541.301.

49.     Defendant is a covered employer required to comply with the FLSA's mandates.

50.     Defendant violated the FLSA with respect to Plaintiff by failing to pay Plaintiff at the rate of one and one half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

51.     At all times, Plaintiff's primary duty was performing general maintenance, which is a non-exempt duty. As a result, Defendant either misclassified Plaintiff as an exempt employee or otherwise failed to pay him time-and-a-half at all times throughout his employment.

52.     Plaintiff routinely worked in excess of forty (40) hours per week during the three years preceding the filing of this Complaint.

53.     Defendant refused and failed to pay Plaintiff the overtime premium for all hours worked by Plaintiff as required by the FLSA throughout his employment.

54.     Plaintiff should have been paid the overtime premium for all hours worked in excess of forty (40) hours per week.

55.     Defendant knew or should have known of the overtime payment requirement of the FLSA.

56.     Throughout his employment, Defendant has knowingly and willfully failed to pay Plaintiff the overtime wages he was due.

57.     The job duties Plaintiff performed in the years preceding the filing date of this Complaint did not exempt him from the overtime pay requirements, or any other requirement of the FLSA.

58.     The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Plaintiff is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable.  In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available, as result of Defendant's willful failure and refusal to pay overtime wages in violations of Sections 6 and 7 of the Act (29 U.S.C. §§206-207).

## SECOND CAUSE OF ACTION
### Ohio Revised Code § 4111.03 —Unpaid Overtime

60.     All of the preceding paragraphs are realleged as if fully rewritten herein.

61.     Chapter 4111 requires that covered employees be compensated for every hour worked in a workweek.  See O.R.C. §§ 4111 et seq., See also, 29 U.S.C §206(b)

62.     Chapter 4111 requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one

workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938.  See O. R. C. § 4111.03 (A), See also, 29 U.S.C. § 207 (a)(1)

63.    Plaintiff was a covered employee entitled to Chapter 4111's protections

64.    Plaintiff was not exempt from receiving Chapter 4111 overtime benefits because he was not an exempt "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA.  See O.R.C. 4111.03(A), See also 29 C.F.R. §§ 541.0, et seq.

65.    Plaintiff was not exempt from receiving Chapter 4111 overtime benefits because, *inter alia*, he was not a "learned professional" employee, as that term is defined under the FLSA.  See 29 CFR §541.301

66.    Defendant is a covered employer required to comply with Chapter 4111's mandates

67.    Defendant violated Chapter 4111 with respect to Plaintiff by failing to compensate him at the rate of one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek

68.    In violating Chapter 4111, Defendant acted willfully and with reckless disregard of clearly applicable Chapter 4111's provisions.

69.    For Defendant's violations of Chapter 4111, Plaintiff has suffered damages, Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

### THIRD CAUSE OF ACTION
### Ohio Revised Code § 4113.15 – Ohio Prompt Pay Act Violations

70.    All of the preceding paragraphs are realleged as if fully rewritten herein.

71.    During relevant times, Defendant was covered by the OPPA and Plaintiff has been employed by Defendant within the meaning of the OPPA.

72.     The OPPA requires Defendant to pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by him during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by him during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

73.     During relevant times, Plaintiff was not paid all wages, including overtime wages at one and one-half times his regular rate within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

74.     Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond the regularly scheduled payday.

75.     In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law, and its actions entitle Plaintiff to liquidated damages in the amount of six percent of the amount of the unpaid overtime compensation owed or two hundred dollars, whichever is greater.

## <u>FOURTH CAUSE OF ACTION</u>
### 29 U.S.C. § 2615(a)(1) - FMLA Interference with Rights

76.     All of the preceding paragraphs are realleged as if fully rewritten herein.

77.     At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

78.     At all times relevant, Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

79.     As indicated above, Plaintiff's first FMLA leave was from approximately June 29, 2015 up to 52 weeks later. Plaintiff's leave was used on an intermittent basis depending on symptomatic episodes and ongoing treatment for his serious health condition. Pursuant to 29

C.F.R. § 825.300, *et seq.*, Defendant is responsible in all circumstances for designating leave as FMLA-qualifying and giving notice of the designation to the employee.

80.    After the alleged expiration of Plaintiff's first FMLA leave, Plaintiff began missing work due to symptomatic episodes and ongoing treatment for his serious health condition. Plaintiff regularly followed Defendant's practice of notifying his supervisor, among others, when he suffered from a symptomatic episode or sought ongoing medical treatment which required him to be absent from work intermittently. Plaintiff's requests during all times relevant for FMLA leave from approximately June, 2015 through November, 2016 were for his "serious health condition" as defined by the 29 U.S.C. § 2611(11)(A)-(B) and were made as soon as practicable by Plaintiff to Defendant.

81.    However, Defendant failed to notify Plaintiff as to whether these absences were FMLA-qualifying even though it had sufficient information to designate the leave as FMLA-qualifying or not.

82.    Upon information and belief, even though Plaintiff was an "eligible employee" after the expiration of his first FMLA leave because he (a) was employed for at least 12 months; and (b) worked for at least 1,250 hours of service for Defendant during the previous 12-month period, Defendant willfully failed to notify him of his eligibility status after Plaintiff provided notice of his intent to take intermittent leave, in violation of 29 C.F.R. § 825.300, *et seq.*

83.    Instead, Defendant disciplined Plaintiff by issuing occurrences each time Plaintiff was absent from work due to symptomatic episodes and/or ongoing treatment that he was accustomed to during his first FMLA-approved leave. During the subsequent months, Plaintiff reasonably believed that his absences would be approved as FMLA leave as he complied with the customary notice and procedural requirements for requesting leave.

84.    On September 28, 2016, Defendant *for the first time* told Plaintiff that he needed to "renew" his FMLA documentation without any explanation or indication that his absences were or were not FMLA-qualifying. In response, Plaintiff exercised his FMLA rights and timely submitted a healthcare certification documentation for approval of his second FMLA leave on or about October 14, 2016.

85.    Furthermore, on or about October 21, 2016, due at least in part to FMLA-qualifying absences and discipline in the form of occurrence points, Defendant placed Plaintiff on a Level 3 Attendance Warning (45 attendance points) for his FMLA-qualifying absences.

86.    Plaintiff was shocked that he was placed on a Level 3 Attendance Warning (45 points) and inquired about the absences being related to his FMLA leave. However, Defendant never provided Plaintiff with his eligibility status or informed him that the absences were or were not FMLA-qualifying.

87.    Instead, that same day, Defendant required Plaintiff to sign a last chance agreement.

88.    The FMLA documentation should have been backdated for a number of absences in the previous months. As such, Plaintiff should have never been placed on a Level 3 Attendance Warning or been forced to sign a last chance agreement for his FMLA-qualifying absences.

89.    On or about November 11, 2016 Defendant terminated for an alleged violation of the last chance agreement due to the alleged policy violations. However, the proffered reason for termination was merely pretextual.

90.    Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave.

91.    Pursuant to 29 C.F.R. § 825.300(b), *et seq.*, when an employee requests leave or when the employer acquires knowledge that the employee's leave may be for an FMLA-qualifying

reason, the employer must notify the employee of his eligibility to take FMLA leave. Additionally, if the employee is not eligible for FMLA leave or if the employee's eligibility status has changed, the employer must state at least one reason why the employee is not eligible.

92.     Pursuant to 29 C.F.R. § 825.301, Defendant is also required to inquire further of the employee to ascertain whether medical leave is potentially FMLA-qualifying. Once the employer has acquired knowledge that the leave is being taken for a FMLA-qualifying reason, the employer must notify the employee as provided in § 825.300(d).

93.     As described above, Defendant willfully failed to comply with federal regulations, including, but not limited to the above-referenced federal regulations.

94.     By taking the foregoing actions, Defendant willfully and/or recklessly interfered with, restrained, or denied the exercise of or the attempt to exercise Plaintiff's FMLA rights and benefits to which he was entitled, and otherwise engaged in conduct that discouraged and/or prohibited him from exercising his rights under the FMLA. *See* 29 U.S.C. § 2615(a).

95.     As a result of Defendant's interference, Plaintiff was harmed in the fact that he was unlawfully terminated while exercising his FMLA rights and denied benefits to which he is entitled under the FMLA.

96.     Therefore, Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of his rights under the FMLA, in violation of Section 2615(a)(1) by taking the following non-exhaustive list of actions: issuing Plaintiff occurrences for FMLA-qualifying absences, forcing Plaintiff to sign a last chance agreement, treating Plaintiff less favorably than similarly situated employees who did not exercise rights under the FMLA, and terminating his employment.

97.     Defendant lacked good faith to believe it had not violated the FMLA in its actions.

98.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect himself from Defendant, including costs and attorneys' fees in accordance with 26 U.S.C. § 2617(a).

**FIFTH CAUSE OF ACTION**
**29 U.S.C. § 2615(a)(2) - FMLA Retaliation**

99.    All of the preceding paragraphs are realleged as if fully rewritten herein.

100.   During his employment, Plaintiff exercised his FMLA rights by requesting and taking intermittent medical leave, which constitutes a protected activity.

101.   In addition, less than a month prior to his termination, Plaintiff renewed his FMLA certification by timely returning the required documents, which also constitutes a protected activity.

102.   Defendant unlawfully retaliated against Plaintiff in violation of 29 U.S.C. § 2615(a)(2) for exercising his rights under the FMLA by taking the following non-exhaustive list of actions: issuing Plaintiff occurrences for FMLA-qualifying absences, forcing Plaintiff to sign a last chance agreement, treating Plaintiff less favorably than similarly situated employees who did not exercise rights under the FMLA, and terminating his employment.

103.   Defendant knew of Plaintiff's protected activity.

104.   Defendant's proffered reasons for its retaliatory actions were merely pretextual.

105.   Defendant willfully retaliated against Plaintiff's rights in violation of the FMLA.

106.   Defendant lacked good faith to believe it had not violated the FMLA in its actions.

107.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to

protect herself from Defendant, including costs and attorneys' fees in accordance with 26 U.S.C. § 2617(a).

### SIXTH CAUSE OF ACTION
### Ohio Revised Code § 4112.02 – Disability Discrimination

108.    All of the preceding paragraphs are realleged as if fully rewritten herein.

109.    At all times relevant herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

110.    At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A) of the Ohio Revised Code.

111.    Defendant knew Plaintiff was disabled and/or regarded him as disabled.

112.    Plaintiff's disability substantially limited his ability to perform several major life functions.

113.    Defendant discriminated against Plaintiff because of his disability by taking the following non-exhaustive list of actions: failing to accommodate his disability, terminating his employment, retaliating against him, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

114.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and benefits.

115.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

116.    Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

## SEVENTH CAUSE OF ACTION
### Ohio Revised Code § 4112.02 – Failure to Accommodate

117.    All of the preceding paragraphs are realleged as if fully rewritten herein.

118.    At all times material herein, Plaintiff suffered from a mental impairment within the meaning of R.C. § 4112.01(A)(13) of the Ohio Revised Code.

119.    Prior to his termination, Plaintiff requested reasonable accommodation for his disabilities including medical leave to be used in the event of symptomatic episodes and/or ongoing medical treatment.

120.    Defendant failed to engage in the interactive process and/or provide a reasonable accommodation. Instead, Defendant issued occurrences, disciplined Plaintiff, and terminated his employment.

121.    Defendant violated R.C. § 4112.02 by failing to accommodate Plaintiff's disabilities and by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for his disabilities.

122.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress including shame, humiliation, embarrassment, and mental anguish.

123.    Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for all legal damages and other relief available under Ohio Revised Code Chapter 4112, including but not limited to punitive damages.

## EIGHTH CAUSE OF ACTION
### Ohio Revised Code § 4112.02(I) - Retaliation

124.    All of the preceding paragraphs are realleged as if fully rewritten herein.

125.    This claim is brought under Ohio law, pursuant to Ohio Revised Code § 4112.02(I), *et seq.*

126.    Plaintiff engaged in a protected activity by requesting reasonable accommodation for his disabilities in the form of medical leave from work.

127.    Defendant knew that Plaintiff engaged in a protected activity.

128.    Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: failing to accommodate his disabilities, disciplining him in the form of attendance points, forcing him to sign a last chance agreement in an attempt to cover up its discriminatory animus, disciplining him while other similarly-situated employees without disabilities received more favorable treatment, terminating his employment, and/or by otherwise discriminating against him in the terms, privileges and conditions of employment.

129.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

130.    Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands back pay and benefits, front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and all other relief the Court deems just and appropriate.

Respectfully submitted,

/s/  *Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Coffman Legal, LLC
1457 S. High St.
Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by a jury of eight (8) persons.

/s/  *Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)