IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Melvin Marek, Jr.,                          Case No. 3:16CV03005

       Plaintiff

    v.                                        ORDER

Toledo Tool & Die Co., Inc.,

       Defendant

This is an employment action for unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. (FLSA)

Melvin Marek accuses former employer Toledo Tool & Die Company of "knowingly and intentionally" withholding overtime wages in violation of state and federal law. (Doc. 14 at ¶ 24). He claims defendant did this not only to himself, but to others, as part of a "company-wide" "policy" to "save on labor costs" and "profit[] at the expense of" similarly situated employees. (*Id.* at ¶¶ 24, 28, 30).

Pending is plaintiff's motion for conditional class certification pursuant to 29 U.S.C. § 216(b), which defendant opposes. (Docs. 15, 17). For the reasons that follow, I deny the motion without prejudice to refiling.

**Background**

Toledo Tool & Die hired Marek as a maintenance technician in February, 2012, and promoted him to "maintenance supervisor" a year later. (Doc. 14 at ¶ 18). Both before and after his promotion, plaintiff's "primary job duties consisted of general maintenance." (Doc. 15-2, ID 204).

Despite his supervisory title, defendant consistently paid Marek on an hourly basis, "and never on a salaried basis." (Doc. 14 at ¶ 18).

Although Marek was a "non-exempt hourly employee,"[1] defendant purportedly failed to pay him and others proper overtime wages "for hours worked in excess of forty (40) in a workweek" between 2014 and 2016. (*Id.* at ¶¶ 21-26). When Toledo Tool & Die later terminated plaintiff's employment, he initiated the instant suit to recover the wages.[2]

Marek now moves to conditionally certify his FLSA claim "as a collective action so that potential . . . plaintiffs can be notified of the suit's existence and of their right to participate." *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010).

Defendant opposes the motion. While it concedes that the required showing is minimal, Toledo Tool & Die argues that Marek "fail[s] to meet even the lenient burden for conditional class certification." (Doc. 17, ID 262).

## Standard of Review

"Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of forty hours in each workweek." *In re Amazon.com, Inc. Fulfillment Center FLSA Wage and Hour Lit.*, 852 F.3d 601, 608 (6th Cir. 2017) (citation omitted). An employee can vindicate his right to overtime pay under the Act by asserting a claim against his

---

[1]Plaintiff alleges he was a supervisor in name only; he had no "managerial duties," did not "supervise[] two or more employees" and "could not hire, fire, or discipline" subordinates. (Doc. 14 at ¶ 20). Viewing the facts in a light most favorable to plaintiff, I assume, for purposes of this motion, that he was a non-exempt, overtime eligible employee.

[2]Although the present motion concerns only his FLSA claim, Marek also alleges defendant terminated him in violation of the Family Medical Leave Act 29 U.S.C. § 2601 *et seq.*, and various state-law protections.

employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Such a collective action differs from a traditional Rule 23 class action in two significant ways.

"First, whereas Rule 23 creates a regime where class members are either bound by the litigation or must *opt out* of a suit to avoid becoming parties bound by any judgment, the FLSA requires employees to *opt in* to the action." *Taylor v. Pilot Corp.*, 697 F. App'x 854, 857 (6th Cir. 2017) (emphasis in original). "Second, whereas Rule 23 outlines a relatively detailed class-certification process, the FLSA says little about how collective actions should work." *Id.* The Act, for instance, "does not define 'similarly situated' and neither has the Sixth Circuit." *Myers v. Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016).

"But notably," the district courts have developed a solution, employing a two-phase inquiry to determine whether to certify a collective action. *Id.*

Phase one, known as conditional certification, "takes place at the beginning of discovery." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). A plaintiff who wins conditional certification is "permitted to solicit opt-in notices, under court supervision, from current and former employees." *Myers*, 201 F. Supp. 3d at 890 (citation omitted). Phase two, known as final certification, "occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation marks omitted).

At the conditional certification phase, I determine, as a preliminary matter, whether the named plaintiff "ha[s] shown that the employees to be notified are, in fact, 'similarly situated.'" *Id.* In its *O'Brien* decision, the Sixth Circuit detailed "three non-exhaustive factors . . . relevant" to this inquiry: "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness

and procedural impact of certifying the action." *Monroe v FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (brackets omitted) *abrogated on other grounds by Campbell-Ewald v. Gomez*, 136 S. Ct. 663 (2016)).

Under these factors, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. But, by the same token, "showing a 'unified policy' of violations" is not a hard and fast requirement. *Monroe*, 860 F.3d at 398 (citation and brackets omitted).

Employees may also be similarly situated if "their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* (citation and brackets omitted). This standard is "less stringent" than the Rule 20(a) joinder requirement that all claims "arise out of the same action or occurrence," and Rule 23(b)(3)'s requirement that common questions predominate the action. *O'Brien*, 575 F.3d at 584 (citation omitted).[3]

In terms of proofs, I consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread plan was submitted."

---

[3]Marek disputes defendant's reference to the *O'Brien* case. According to plaintiff, *O'Brien* "clearly . . . speaks to a plaintiff's burden at the second, decertification stage, and not the first, notice stage which is the current posture of this case." (Doc. 19, ID 285-86 (emphasis omitted)). He is correct. The Sixth Circuit took up *O'Brien* after the district court's final decertification decision because an order of initial, conditional certification "is not [an appealable] final judgment on the merits." *Taylor*, 697 F. App'x at 858. Nor is it "a collateral order excepted from the final-judgment rule." *Id.* (citing *Comer*, 454 F.3d at 549). However, *O'Brien's* guidance in defining "similarly situated" is applicable at the conditional-certification stage, even if the proofs here are held to a lesser standard. *See, e.g.*, *Myers*, 201 F. Supp. 3d at 890; *see also David v. Kohler*, 2017 WL 3865656, *5 (W.D. Tenn. 2017) (applying the *O'Brien* factors as identified in *Monroe*, *supra*, 860 F.3d at 397).

*Myers*, 201 F. Supp. 3d at 890 (citation and ellipsis omitted). Reviewing this evidence, I am mindful that Marek need only make a "modest factual showing" of substantial similarity. *Comer*, 454 F.3d at 547. To that end, I do not test plaintiff's evidence by "consider[ing] the merits of the claims, resolv[ing] factual disputes, or evaluat[ing] credibility." *Myers*, 201 F. Supp. 3d at 890.

I ask only whether Marek demonstrates "at least a colorable basis for [his] claim that a class of 'similarly situated' plaintiffs exists." *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). This "fairly lenient standard . . . typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (citation omitted).

Once the action reaches the final certification stage, I "reexamine[] whether the employees actually meet the similarly-situated requirement" with the benefit of more discovery, *Taylor*, 697 F. App'x at 857–58, under a "stricter standard," *Myers*, 201 F. Supp. 3d at 890. If I then find similarity lacking, I "can always remove employees from the 'class' [I] 'certified' at stage one." *Taylor*, 697 F. App'x at 858.

## Discussion

The class Marek seeks to certify is broad. It consists of "[a]ll current and former hourly, non-exempt employees of Defendant, who worked in excess of forty (40) hours in a workweek, but were not paid their overtime rate for all such hours worked, resulting in unpaid overtime wages." (Doc. 15, ID 195).

To prove that these employees are "unified" by a "common . . . statutory violation[]," *O'Brien*, 575 F.3d at 584, plaintiff offers the following: a personal declaration; his Toledo Tool & Die payroll records listing hours worked and hourly rate; and the payroll records of six other Toledo Tool & Die workers, identified by employee number.

## A. Marek's Declaration

First, in the declaration, Marek attests:

> 6. To the best of my knowledge, all TTD hourly non-exempt employees are subject to the same payroll policies and procedures.
>
> 7. Myself and other TTD employees are compensated on a weekly basis.
>
> 8. I regularly worked in excess of 40 hours in a workweek.
>
> 9. Although I worked in excess of 40 hours in a workweek, TTD often failed to pay me at one-and-a-half times my regular rate of pay for each hour worked in excess of 40.
>
> 10. I reviewed payroll records produced by TTD as part of their Initial Disclosures, including [those attached as Exhibits C and D to plaintiff's motion];
>
> 11. Based on the previously identified payroll records . . . TTD did not pay me and other TTD employees at a rate of one-and-one-half times our regular rates of pay for each hour worked in excess of forty (40) in our workweeks.

(Doc. 15-2, ID 204-05).

A plaintiff "seek[ing] certification based solely on his own declarations" faces an uphill climb. *Peer v. Grayco Mgmt., LLC*, 2017 WL 2403269, *4 (M.D. Tenn. 2017) (collecting cases). This is so because a single employee's experience may not be representative of every employee's experience–particularly where, as here, the proposed class "encompasses *all* hourly employees" irrespective of "job category." *See Cason v. Vibra Healthcare*, 2011 WL 1659381, * 2 (E.D. Mich. 2011) ("Plaintiff asserts that she was denied meal breaks as a result of patient care needs. This evidence does not raise an inference that all employees in every job category were subject to similar pressures to work through breaks.").

Marek's reliance on his own payroll records poses a similar problem. Plaintiff undoubtedly believes his records demonstrate a failure to pay overtime wages, otherwise he would not have sued

defendant. But evidence that defendant underpaid one employee–even if coupled with the belief that "all TTD hourly non-exempt employees are subject to the same payroll policies and procedures"–does not suggest that defendant also underpaid "[a]ll current and former hourly, non-exempt employees . . . who worked in excess of forty (40) hours in a workweek."

This issue goes to the first *O'Brien* factor, "the factual and employment settings of the individual" plaintiffs. *O'Brien*, *supra*, 575 F.3d at 584. With regard to this factor, I consider the proposed plaintiffs' "job duties, geographic locations, employer supervision, and compensation," to "the extent relevant to the case." *Monroe*, 860 F.3d at 402 (citation omitted). Judging that relevance is difficult here given the little information Marek provides in support of his motion.

I know that plaintiff worked for defendant as a maintenance technician, and later, a maintenance supervisor, though he evidently did not perform any "supervisory" work. I know his duties "consisted primarily of general maintenance," but I do not know what "general maintenance" is as it relates to tool and die work. (Doc. 15-2, ID 204). Marek does not tell me.

Nor does he describe the job duties of the other potential plaintiffs–"[a]ll"of defendant's "current and former hourly, non-exempt employees." Asking plaintiff to describe the duties of a group this expansive may seem a tall order, especially this early in the litigation. But if this is the class Marek seeks to certify, he "must the make the required showing as to that entire set of individuals." *Munoz v. Big Valley, Inc.*, 915 F. Supp. 2d 46, 50 n.5 (D. D.C. 2013).

As for geographic location, Marek does not indicate whether Toledo Tool & Die has multiple locations, multiple work sites within a single location, or a single work site within a single location. "Two employees may be similarly situated for purposes of the FLSA despite different

responsibilities and work sites, but the Court has no way to make that determination on the present record." *Id.* at 49.

Nor can I adequately consider "the different defenses to which the plaintiffs may be subject on an individual basis"—the second *O'Brien* factor. *O'Brien*, *supra*, 575 F.3d at 584. Ordinarily, the likelihood that an employer may have to assert individualized defenses will not overcome the claimant's minimal showing of similarity, so long as "sufficient common issues or job traits otherwise permit collective litigation." *Monroe*, 860 F.3d at 404. Without further information about the class Marek wishes to notify, discerning whether "sufficient common issues or job traits . . . permit collective litigation" in this case is anyone's guess.

Of course, this is not to suggest that a lone employee, limited by his own experience, is necessarily unqualified to discuss how a broadly applied work policy might have impacted his coworkers. An individual claimant *can* speak to an employer's company-wide policy if he has personal knowledge of other employees' circumstances.[4] But key to this strategy is articulating a "factual basis" for his personal knowledge, one "from which the Court can conclude the Plaintiff and other employees were similarly situated and suffered from a common policy that violated the FLSA." *Munoz*, 915 F. Supp. 2d at 50–51.

---

[4]This is at least true where the proposed class works in a "single . . . employment setting." *Compare Smith v. Waverly Health Care and Rehab. Ctr.*, 2013 WL 817266, *2 (M..D. Tenn. 2013) (granting conditional certification to individual plaintiff looking to certify a class of nursing assistants at a single facility); *with Peer*, *supra*, 2017 WL 2403269, at *4 (denying individual plaintiff certification for employees at multiple restaurant locations "without any hint that those locations, too, engaged in the same sort of FLSA violations"). Marek can also increase his odds of conditional certification if he limits his proposed class to "a specific subset of employees" who share similar job duties. *Munoz*, 915 F. Supp. 2d at 50 n.5. If he submits a revised motion for conditional certification, plaintiff may also consider limiting the class based on the FLSA's three-year limitations period.

For instance, a plaintiff pressured to cut her lunch break short may "have personal knowledge about whether other employees clocked in and clocked out for lunch breaks or were regularly unable to take a lunch break." *Myers*, 201 F. Supp. 3d at 894. I may also infer that an affiant who "got to know" her coworkers "would have talked" to them about "job duties," "hours worked" and "whether they were paid for overtime hours, as stated in [her] declaration[]." *Nobel v. Serco, Inc.*, 2009 WL 3154252, * 3 (E.D. Ky. 2009). "In each of these cases," the plaintiffs succeeded because they "submitted affidavits reflecting their personal knowledge that individuals employed in similar roles were paid by a similar method that violated the FLSA." *Munoz*, 915 F. Supp. 2d at 50–51.

But in this case, Marek did not.

### B. Employee Payroll Records

Plaintiff's suspicions regarding defendant's policies are not based on his interactions with coworkers. He believes defendant denies its employees overtime pay "[b]ased on" his "review" of the "payroll records produced by TTD as part of their Initial Disclosures." (Doc. 15-2, ID 204-05).

### 1. The Records Alone Do Not Prove a FLSA Violation

Plaintiff attached these records as Exhibits C and D to his motion for conditional certification. On their face, the records suggest that Toledo Tool & Die did, in fact, pay several employees at their regular hourly rate for more than forty hours of work in a single workweek.

But the pay periods they cover–June 30, 2014, through July 6, 2014, and September 7, 2015, through September 13, 2015–both include national holidays.[5] That matters because only hours

---

[5]At first glance, the dates at the top of the payroll records suggest that they cover the pay periods for the weeks following these holidays–July 6, 2014, through July 13, 2014, and September 13, 2015, through September 19, 2015. But the actual *pay dates* at issue (which appear beneath each employee's identification number) are July 10, 2014, and September 17, 2015. According to Toledo Tool & Die's policy, "[t]he pay received" on those dates is "from the previous pay period," and a pay

9

devoted to "employment" count toward the forty-hour trigger for overtime pay, *see* 29 U.S.C. § 207(a); hours devoted to the "occasional periods when the employee is not at work" due to "holiday[s]" do not. 29 C.F.R. § 778.218(a). Thus, "the FLSA does not require employers to include in overtime computation time in which employees are 'absent from work for vacation, holidays, illness, or any other reason.'" *Szymula v. Ash Grove Cement Co.*, 941 F. Supp. 1032, 1039 (D. Kan. 1996) (citation and brackets omitted)).

For instance, on July 4, 2014, Toledo Tool & Die paid its employees ten hours' pay at their regular hourly rate in accordance with its holiday pay policy, even though those employees did not report for work. "Payments" like these "are made for occasional periods when the employee is not at work due to . . .[a] holiday," "not . . as compensation for his hours of employment." 29 C.F.R. § 778.218(a). And because they are not compensation for hours of employment, "no part of such payments may be credited toward overtime compensation due under the Act." *Id.*

In this regard, the payroll records in Exhibits C and D are somewhat misleading. They include columns for hours paid, and rate of pay per hour, but the hours-paid column does not distinguish between hours paid for actual work (which count toward overtime computation) and hours paid for holiday time (which do not). Practically speaking, they reflect an employee's true work hours only if I deduct ten hours' holiday pay from each respective pay period, "no part"of which "may be credited toward overtime compensation." 29 C.F.R. § 778.218(a). Once I do, the evidence that defendant underpaid its employees largely dissipates.

---

period "spans from Monday to Sunday." (Doc. 17-1, ID 270). The Monday to Sunday immediately before July 10, 2014, would have been June 30 through July 6, encompassing Independence Day. And the Monday to Sunday immediately before September 17, 2015, would have been September 7 through September 13, encompassing Labor Day.

Employee No. 10308's payment history illustrates this point. Toledo Tool & Die paid him for 48.75 hours of work at his regular rate for the week of June 30, 2014, to July 6, 2014. Yet, as far as I know, Employee No. 10308 actually worked only 38.75 hours that workweek. Defendant paid him an additional ten hours at his regular rate on account of the July 4, 2014 holiday–an "occasional period[] when the employee [wa]s not at work," and which defendant "may" not "credit[] toward overtime compensation." 29 C.F.R. § 778.218(a).

This is not a FLSA violation.

"[O]vertime for holidays . . . [is] due only for that time in any particular week in which the employee actually worked more than forty hours." *Joseph G. Moretti, Inc. v. Boogers*, 376 F.2d 27, 28 (5th Cir. 1967) (per curiam). Standing alone, the payroll records in Exhibits C and D do not prove that any Toledo Tool & Die employee "actually worked" more than forty hours in a workweek. Nor can plaintiff infer that any individual employee actually worked more than forty hours in a workweek from his "review" of the records–indeed, absent some distinction between paid holiday hours and paid working hours, no one can.

### 2. I Need Not Credit Defendant's Affidavits

Still, Marek protests. He urges me to disregard the employee affidavits Toledo Tool & Die submitted with its response in opposition to conditional certification, which draw attention to the holiday pay issue and purport to absolve defendant of wrongdoing.

In the affidavits, each employee affiant identifies himself according to the employee identification numbers in the payroll records. Each then explains that "Exhibits C and D reflect that [he] was appropriately paid for all hours actually worked" ( Doc. 17-2, ID 272), through some

combination of hours actually worked plus holiday pay, or hours actually worked plus holiday pay and paid vacation time.[6]

Although some courts credit employer-submitted evidence at the conditional-certification stage, *see, e.g.*, *Leglands v. JK & T Wings, Inc.*, 2016 WL 4073548, *4 (E.D. Mich. 2016), I am not inclined to do so. Weighing defendant's affidavits would require me to "resolve factual disputes, decide substantive issues on the merits, or make credibility determinations"–tasks better left for after discovery, if I reach them at all. *Wlotkwoski*, 267 F.R.D. at 219. "Moreover, form affidavits gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." *Meyers*, 201 F. Supp. 3d at 891–92 (citation omitted).

### C. Lack of Personal Knowledge

However, excluding this evidence does not make plaintiff's case for conditional certification any stronger. Marek assumes that without the rebuttal affidavits, I must accept his interpretation of Exhibits C and D, and agree that they prove defendant underpaid its employees for at least two pay periods. But the problem is not that the affidavits rebut evidence of a FLSA violation in the payroll records; its that the payroll records do not evince a FLSA violation in the first instance.

This is where plaintiff's lack of personal knowledge makes all the difference.

If Marek knew that certain employees had actually worked in excess of forty hours during either pay period, he could establish "*some* factual basis" for his claim that he and others "were victims of a common plan or policy that violated the law." *Munoz*, 915 F. Supp. 2d at 49–51 (citation omitted). Indeed, if he offered the details necessary to evaluate the *O'Brien* factors, Marek's

---

[6]Paid vacation time is another "occasional period[] when the employee is not at work." 29 C.F.R.§778.218(a).

"personal knowledge that others . . . did not receive the full amount of overtime pay they were owed" may warrant conditional certification regardless of corroborating payroll records. *Smith*, 2013 WL 2013 WL 817266, at *2.

But Marek does not have personal knowledge that Toledo Tool & Die denied other employees overtime compensation. At most, he has evidence that defendant paid them for "occasional periods" when they were "not at work," and did not credit "such payments . . . toward overtime compensation due under the Act," just as regulations require. *See* 29 C.F.R. § 778.218(a). Evidence of compliance with FLSA regulations is not a "colorable basis" to believe "that a class of 'similarly situated' plaintiffs exists." *Olivo*, 374 F. Supp. 2d at 548.

For that reason, the final *O'Brien* factor, "the degree of fairness and procedural impact of certifying the action," plays out much like the first two. *Monroe*, 860 F.3d at 397. Granting conditional certification does not serve the FLSA's remedial purpose absent a modicum of proof that "other employees similarly situated" are in need of a legal remedy. *See* 29 U.S.C. § 216(b).

## Conclusion

It is, therefore,

ORDERED THAT plaintiff's motion for conditional certification pursuant to 29 U.S.C. § 216(b) (Doc. 15) be, and the same hereby is denied without prejudice to refiling.

So ordered.

/s/ James G. Carr

Sr. U.S. District Judge