# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Melvin Marek, Jr., et al.,  Case No. 3:16CV3005

    Plaintiffs

    v.  ORDER

Toledo Tool & Die Co., Inc.,

    Defendant

This is a suit for unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

Plaintiffs Melvin Marek, Jocelyn DeLuca, and Michelle Poppe are former employees of Toledo Tool Die Company, Inc. (TTD). Their second amended complaint alleges that TTD maintains an illegal time-keeping policy that rounds down its employees' recorded hours so as to reduce their compensable time and avoid paying overtime. (Doc. 28 at ¶33). Plaintiffs brought this suit on behalf of themselves and all other similarly situated employees.

In a prior order, I denied Marek's initial motion for conditional certification. *Marek v. Toledo Tool & Die Co., Inc.*, 2017 WL 5891765 (N.D. Ohio 2017). The basis for that decision was, essentially, Marek's failure to establish the extent to which his experience with unpaid overtime wages was representative of the proposed class members' experience. *Id.* at *5–7.

My denial was without prejudice, however, to the filing of an amended certification motion.

Pending is the plaintiffs' amended motion for conditional certification. (Doc. 32). Because that submission cures the deficiencies identified in *Marek*, *supra*, I grant the amended motion.

**Background**

TTD is a Toledo-based company "in the business of stampings, die, and welded assemblies." (Doc. 28 at ¶19). Plaintiffs worked as hourly, non-exempt employees at TTD at various times between 2012 and June, 2018.

Marek was a maintenance worker from early 2012 through November, 2016, performing "general maintenance and repair of facility equipment[,] machinery, and production equipment[.]" (Doc. 28 at ¶6; Doc. 32 at 13). DeLuca was a production worker who from April, 2017 through April, 2018 "assembled thousands of parts . . . on a daily basis[.]" (Doc. 28 at ¶ 11; Doc. 32 at 15). Poppe was also a production worker performing the same work as DeLuca, but from May, 2017 through June, 2018. (Doc. 28 at ¶15; Doc. 32 at17).

TTD's employee handbook contains the company's "Recording Time Worked" policy. (Doc. 32–1 at 11).

Under this policy, all of TTD's hourly, non-exempt employees "must 'punch' in at the beginning of their shift and 'punch' out at the end of their shift," as well as "'punch' out whenever they leave the Company's property . . . and 'punch' back in upon returning[.]" (Doc. 28 at ¶¶28–29; Doc. 32–1 at 11). The policy applied to the named plaintiffs and all members of the proposed FLSA collective class, including employees working as, *inter alia*, production workers, tool-and-die makers, machinists, and quality technicians. (Doc. 28 at ¶¶ 29–30; Doc. 32–1 at 4).

TTD "has one main worksite consisting of a few buildings." (*Id.* at 3). Using a personalized code, the named and potential plaintiffs "punch in" at the entrance of the main building. At the end of their shifts, the employees "punch out" at the same location. (Doc. 28 at ¶31; Doc. 32 at 11). The equipment that TTD uses to document its employees' time was capable of recording, and in fact recorded, the precise time at which each employee punched in and out. (Doc. 32 at 12).

Plaintiffs allege, however, that TTD "maintains an unlawful rounding policy whereby its hourly employees' compensable time worked is consistently rounded to TTD's benefits to reduce the actual compensable time that should be paid[.]" (Doc. 32 at 11).

The complaint alleges that, in some cases, TTD rounded the employees' time entries "to their assigned start and end times," even though the employees had punched in and were working before or after their assigned shift times. (Doc. 28 at ¶34; Doc. 32 at 12). TTD also altered the times at which the employees actually "punched in" or "punched out." (Doc. 32 at 12). Plaintiffs contend this practice was unlawful because it "consistently results in the unlawful reduction of TTD's hourly employees' compensable hours worked." (*Id.*).

The plaintiffs' declarations confirm that each was subject to the rounding practice during his or her tenure at TTD.

Marek claims, for example, that the rounding practice caused TTD not to pay him 0.8 hours of overtime during the week of May 2, 2016. (Doc. 32–1 at 6–7). DeLuca experienced a similar shortfall during the week of June 19, 2017, when TTD failed to pay her for 1.3 hours of "compensable time prior to and after her shifts." (Doc. 32 at 16; Doc. 32–2 at 6–8). Finally, due to allegedly unlawful rounding, TTD did not pay Poppe for at least 1.3 hours of overtime worked during the week of June 19, 2017. (Doc. 32–3 at 6–8).

Beyond their own experiences, plaintiffs also interacted on a daily basis with their fellow hourly, non-exempt TTD coworkers and saw them clocking in and clocking out. (*E.g.*, Doc. 32–1 at ¶¶5, 10, 16).

In consultation with their attorneys, moreover, the named plaintiffs also reviewed "the payroll and timekeeping records of [the] Timeclock Associates" (Doc. 32 at 19), a name plaintiffs use to refer to all of TTD's hourly, non-exempt employees. (Doc. 28 at ¶29). Based on this review, plaintiffs determined that "every current or former TTD Timeclock Associate was similarly affected by the same FLSA-violating Rounding Policy resulting in unpaid overtime." (Doc. 32 at 19). By way of example, plaintiffs highlight twenty-one examples of prospective class members whose recorded time exceeded forty hours in a given work week, but whom TTD paid no overtime. (*Id.*).

Based on this evidence, plaintiffs ask that I conditionally certify a class of "[a]ll current and former hourly, non-exempt employees of [TTD] who, during any workweek within the three years preceding the Court's ruling on the instant Motion, 'clock in' or 'clock out' to keep track of their compensable hours at [TTD's] worksite and work at least forty (40) hours in any workweek." (Doc. 32 at 1–2).

**Standard of Review**

"The FLSA authorizes collective actions 'by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting 29 U.S.C. § 216(b)).

"There are two stages of collective action certification, the notice stage and the decertification stage." *Osman v. Grube, Inc.*, 2017 WL 2908864, *5 (N.D. Ohio 2017) (Helmick, J.).

"The first, or 'notice' stage, takes place at the beginning of discovery with a focus on determining whether there are plausible grounds for plaintiffs' claims. If so, plaintiffs are permitted to solicit opt-in notices, under court supervision, to potential plaintiffs such as current and former employees of defendant." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011) (Zouhary, J.). "Phase two, known as final certification, occurs after all the opt-in forms have been received and discovery has concluded." *Perez v. A+ Bldg. Maint. & Home Repair, LLC*, 2018 WL 2002420, *2 (N.D. Ohio 2018) (Carr, J.).

Because the parties in this case have conducted limited discovery on conditional-certification issues, "a slightly elevated standard" applies. *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 895 (S.D. Ohio 2018). Under this so-called "modest plus" standard, the plaintiff must make "an elevated factual showing, something beyond what is alleged in the pleadings and otherwise advancing the ball down the field beyond the pleadings." *Id.*

Even under this standard, however, I do not consider the merits of the plaintiffs' claims, resolve factual disputes, or make credibility findings. *Osman*, *supra*, 2017 WL 2908864 at *5–6.

## Discussion

The question at the conditional-certification stage is "whether the named plaintiff has shown that the employees to be notified are, in fact, similarly situated." *Marek*, *supra*, 2017 WL 5891765 at *2.

In *Monroe*, *supra*, 860 F.3d at 397, the Sixth Circuit identified the "three non-exhaustive factors" that inform the "substantially similar" inquiry: "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject to on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." The court also reaffirmed the teaching of *O'Brien v. Ed Donnelly*

*Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009), that "employees who suffer from a single, FLSA-violating policy *or* whose claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct, are similarly situated." *Monroe*, *supra*, 860 F.3d at 398 (emphasis in original).

Plaintiffs contend that they and the members of the proposed collective action are similarly situated.

They argue that all proposed class members worked for TTD at its single workspace, performing "substantially the same job duties," and that all were subject to "the same FLSA violating policies and/or practices" – namely, TTD's time-keeping policy and its unlawful rounding of employees' time. (Doc. 32 at 30). Plaintiffs also maintain that their claims "are not predicated on the unique circumstances of any one employee"; rather, the claims are "universal" in the sense that they all depend on the same unlawful policy. (*Id.* at 31).

TTD opposes certification on two grounds.

First, TTD argues that "[p]laintiffs have failed to submit evidence of personal knowledge that all potential plaintiffs suffered from a single, FLSA-violating policy." (Doc. 38 at 4). In TTD's view, plaintiffs' allegations actually establish that its timekeeping policy is lawful under 29 C.F.R. § 785.48(a), which in certain cases permits employers to disregard "early or late clock punching."

Second, TTD contends that Marek's, DeLuca's, and Poppe's declarations are "questionable" and "suspect." (Doc. 38 at 6). This is so, according to TTD, because "there is no way that the Plaintiffs could have personal knowledge of other employee's circumstances." (*Id.*).

Having considered the plaintiffs' submissions under the "modest plus" standard, and despite defendant's objections, I find that plaintiffs are entitled to conditional certification.

### A. Common Theories of an FLSA Violations Unify the Claims

At bottom, certification is appropriate here because the plaintiffs' claims "are unified by common theories of defendants' statutory violations[.]" *Monroe*, *supra*, 860 F.3d at 398.

Here, all named and potential plaintiffs work at the same TTD facility. They are all subject to the same time-keeping policy, and the named plaintiffs have all observed other non-exempt, hourly workers clocking in and clocking out. Each named plaintiff has also identified at least one pay period in which, due to TTD's alleged rounding policy, he or she did not receive overtime wages to which he or she was entitled.

Furthermore, in light of the named plaintiffs' review of the "payroll and timekeeping records of [the] Timeclock Associates" – all of which TTD created and controlled – and their specific identification of at least twenty-one other instances of an hourly employee subject to allegedly improper rounding (Doc. 32 at 19) – there is good reason to think they all have experienced apparent unlawful rounding.

This is more than enough to satisfy TTD's demand that "[p]laintiffs must produce some evidence that 'the named and potential plaintiffs were victims of a common, illegal plan or policy.'" (Doc. 38 at 3) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). The first *Monroe* factor – the plaintiffs' factual and employment setting – therefore weighs in favor of finding that the named and potential plaintiffs are similarly situated.

Notably, TTD makes no argument that the second or third *Monroe* factors undermine the named plaintiffs' claim to be similarly situated with the prospective class members.

For these reasons, plaintiffs have established at this early juncture that they and the unnamed plaintiffs are similarly situated.

### B. Plaintiffs' Allegations Do Not Establish
### That TTD's Rounding Policy Is Lawful

As TTD observes, federal regulations permit employers in certain cases to disregard an employee's punching in or out before the start of, or after the end of, her shift. Under 29 C.F.R. § 785.48(a), "employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods *provided, of course, that they do not engage in any work*. Their early or late clocking may be disregarded." (Emphasis supplied).

TTD reads plaintiffs' motion as complaining about a rounding policy that complies with this provision. According to TTD, plaintiffs' submissions establish that the rounding policy is lawful because the "Plaintiffs concede" that the timekeeping records and the rounding policy ensure that "they are paid for their shift, a practice entirely lawful under 29 C.F.R. § 785.48(a)." (Doc. 38 at 6).

But that is more wishful thinking than a plausible understanding of the plaintiffs' complaint and certification motion.

Nowhere do plaintiffs "concede" that TTD complies with the FLSA by paying them for their shifts. Rather, plaintiffs have alleged – and offered considerable evidence suggesting – that TTD rounds down their hours worked and thus fails to pay them for time worked before and after their assigned shift times. The upshot of this process is the denial of overtime pay to which the FLSA entitles the plaintiffs. Consequently, such a rounding process would plainly be illegal under § 785.48 because "it will result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."

Finally, in *Marek*, *supra*, 2017 WL 5891765 at *5, I held that the payroll records of Marek's co-workers did not establish that he and the potential class members were similarly situated. This was because the records themselves showed that TTD "did, in fact, pay several

8

employees at their regularly hourly rate[.]" *Id.* That is a far cry from the situation here, where the plaintiffs' evidence corroborates rather than refutes their allegation that a single, FLSA-violating policy affects them and the proposed class members.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiffs' amended motion for conditional class certification (Doc. 32) be, and the same hereby is, granted.

2. The collective FLSA class includes all current and former hourly, non-exempt employees of Toledo Tool and Die Company, Inc., who, during any workweek within the three years preceding the date of this order, "clock in" or "clock out" to keep track of their compensable hours at Toledo Tool and Die's worksite and work at least forty hours in any workweek.

3. The parties shall meet and confer regarding the content and form of the notice that this Court will issue to the proposed class members and shall, within twenty-one days of the date of this order, submit a joint proposed notice with a specific opt-in period of 90 days. The meet-and-confer time period shall be, and the same hereby is, deemed tolled for purposes of the statute of limitations.

4. The parties should also meet and confer regarding the content of a Reminder Email, which plaintiffs' counsel may send to the prospective class members halfway through the opt-in period.

5.  Within fourteen days of the date of this order, TTD shall produce to plaintiffs' counsel a list, in electronic and importable format, of all individuals who fall within the conditionally certified class described above that contains:

    a.  The current or former employee's full name;

    b.  His or her last known home address and, to the extent available to TTD, his or her telephone number and email address; and

    c.  The current or former employee's dates of employment and position(s).

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge